UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA               CRIMINAL NO. 14-cr-00166-01

VERSUS                                 JUDGE FOOTE

LLOYD E. BARMORE                       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Defendant is charged with possession of methamphetamine with intent to distribute, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a convicted felon. The charges arise out of a search of Defendant's person and vehicle during a traffic stop. Before the court is Defendant's **Motion to Suppress. Doc. 29.** For the reasons that follow, it is recommend that the motion be denied.

**Facts**

At 12:17 a.m. on July 10, 2014, Louisiana State Trooper John Tademy was patrolling Highway 3132 in Shreveport, Louisiana. Tr. 8. Tademy observed a pickup truck that "weaved several times, almost striking another vehicle, basically going from one end of the freeway to the other end." Id. The trooper activated his lights and stopped the vehicle to check for an impaired or sleepy driver. Tr. 9. (The multiple traffic violations are clearly shown on video, which was captured on Tademy's dash camera. Gov. Ex. 1. Unfortunately, the audio recording device malfunctioned, and there is no audio of the traffic stop. Tr. 9-10.)

Trooper Tademy made contact with the driver, who stated that she was sixteen years old and had only a learner's permit (which was not in her possession). Tr. 14-15.  It is a violation of Louisiana law for a minor to drive after midnight. Id. The trooper  requested registration and insurance from the driver. Id.; Gov. Exhibit 1, Video #1 at time stamp 4:17. Tademy was given the registration for the vehicle, but Defendant (the passenger) was unable to provide proof of insurance. Id.

Trooper Tademy asked the juvenile driver to walk back behind the vehicle to talk with him.  Tr. 16.  The juvenile told him that she did not know the passenger's name. Id. Trooper Tademy became very concerned and questioned whether it was "some type of human trafficking or if she was a run-away or a crime was going on." Id. The juvenile was nervous to the point of crying, and had watery eyes.  Id.

Trooper Tademy went back to the vehicle in an attempt to identify the passenger and get proof of insurance. Tr. 18.   When Tademy asked Defendant who the juvenile was, Defendant told him that he did not know her name.  Defendant stated that the juvenile was his best friend's girlfriend's daughter and he was taking her out to let her drive. Tr. 18. Defendant was unable to produce a driver's license. Id.  Trooper Tademy was highly suspicious about possible criminal activity.   About this time, Shreveport Police Officer Daniel Meyers arrived on the scene to assist. Id.; Gov. Ex. 1, Video #1 at time stamp 9:35.

Defendant eventually produced proof of insurance for the vehicle, but he could not locate his driver's license. Tr. 19. Defendant placed a cell phone call to an individual who identified herself to Trooper Tademy as the mother of the juvenile. Tr. p. 20. Tademy

instructed her to come get her daughter because it was against the law for her to drive after midnight. Tr. 21. The mother told Tademy that she did not know the name of the owner of the vehicle. Id.

Trooper Tademy and Officer Meyers returned to the vehicle, and Tademy again requested Defendant's driver's license. Tr. 22. As Defendant bent over to look inside the passenger door for his driver's license, his untucked t-shirt lifted slightly, and both Trooper Tademy and Officer Meyers simultaneously observed a smoking pipe tucked into (or hanging from) Defendant's belt loop. Tr. 95; Gov. Ex. 1, Video #1, at time stamp 20:00. Officer Meyers immediately removed the pipe from Defendant's pants. Tr. 95.

Trooper Tademy handcuffed Defendant and placed him under arrest for possession of drug paraphernalia. Tr. 23, 64. Trooper Tademy read Defendant his Miranda rights, and Defendant stated that he had put the pipe behind his back because he did not want the officers to find it in his glove compartment. Tr. at 23. Defendant was then placed in the rear of Trooper Tademy's patrol car. Tr. 24.

The juvenile's mother arrived at the scene. However, before the juvenile departed, she requested to speak with Trooper Tademy privately. Tr. 26. Her mother resisted the request, but she eventually permitted the private conversation. The juvenile told the trooper that the Defendant was very nervous and that she suspected there were drugs in the vehicle. Id.

The juvenile's mother was issued a citation for allowing an unlicensed minor under 17 years of age to drive after midnight. The juvenile was ticketed for improper lane usage

and not possessing her driver's permit. Tr. 25. Prior to the juvenile leaving, and at Tademy's request, Officer Meyers retrieved the juvenile's cell phone from the center console of the vehicle.  Tr. 97-99. Meyers was in the vehicle for approximately 31 seconds while he retrieved the cell phone.  Tr. 117.  He did not look at the floor board or conduct a search. The lighting was poor, and he did not see a container of drugs, a firearm, or a backpack in the vehicle. Tr. 98.

Trooper Tademy requested consent to search Defendant's vehicle, but Defendant refused. Tr. 27. A Shreveport Police canine officer was requested.  However, the canine handler declined to use the dog because the door to the Defendant's vehicle had been left open during the traffic stop. Id.

Tademy asked Defendant if he had a licensed driver who he could call to come and get the vehicle off of the side of the road.  Defendant said no.  The trooper then called for a tow truck and conducted an inventory of the contents and recorded it on a Vehicle Storage Record. Gov. Ex. 5. During the inventory, Trooper Tademy discovered a loaded handgun and a clear plastic Tupperware-type container which appeared to contain methamphetamine. Tr. 35.  He also observed an open backpack on the seat with a digital scale, cash, and a bong in it. Id. All of the items were seized as evidence, and the vehicle was towed.

**Law and Analysis**

  **A.  The Search of Defendant's Person**

Defendant contends that the officers conducted an unlawful search when they lifted his t-shirt to observe (and then remove) the smoking pipe.  However, the facts do not support that contention.  Both officers testified without contradiction that they noticed the pipe in the belt loop of Defendant's pants when Defendant bent over to look inside the vehicle for his driver's license.  The pipe was immediately recognizable as drug paraphernalia and was subject to seizure.  The plain view doctrine permitted the officers to then lift Defendant's shirt, remove the pipe, and place Defendant under arrest without the necessity of obtaining a search warrant.  United States v. Ford, 2015 WL 4497979 (E.D. Tex).

**B.  The Search of the Defendant's Vehicle**

Defendant contends the officers conducted an unlawful search when Officer Meyers entered his vehicle to retrieve the juvenile's cell phone.  Again, the facts do not support Defendant's argument.  Officer Meyers went straight to the center console and removed the cell phone.  He testified – very credibly – that he did not see the firearm, back pack, or container of methamphetamine during his brief entry into the vehicle.  Thus, the officers did not conduct an illegal search under the guise of returning the cell phone to the juvenile.

In any event, the officers had probable cause to enter and search Defendant's vehicle. At the time Trooper Tademy conducted the inventory search, the officers collectively knew: (1) Defendant was on a busy highway after midnight with a juvenile he did not know; (2) Defendant could not produce a driver's license; (3) Defendant had just been arrested for possession of drug paraphernalia; (4) Defendant told the officers he had removed the smoking pipe from his glove compartment to conceal it from the officers; (5) the juvenile

told the officers that Defendant was very nervous and she thought there were drugs in the vehicle; and (6) the vehicle was registered to Defendant.  The totality of those circumstances constituted probable cause to search the vehicle for drugs and additional drug paraphernalia. United States v. Oritz, 781 F.3d 221, 229 (5th Cir. 2015).

The search of the vehicle is further supported by the inventory exception to the warrant requirement.  Colorado v. Bertine, 479 U.S. 367, 371 (1987); United States v. McKinnon, 681 F.3d 203, 209 (5th Cir. 2012).  Because Defendant could not produce a driver's license, Trooper Tademy had three options in dealing with the vehicle:  (1) allow Defendant to call a licensed driver come out to remove the vehicle; (2) allow Defendant to call a tow truck company of his choice; or (3) call a non-preference tow truck company which would be randomly selected.  Defendant stated that he did not know anyone he could call who had a license to get the vehicle.  He also had no preference for a towing company. Tademy had no choice but to use option three.

Pursuant to established Louisiana State Police policy, Trooper Tademy could not simply leave the vehicle on the side of the busy highway where it would be a serious safety hazard.  Tr. 29-33; Govt. Ex. 2, 3, and 4. Trooper Tademy called Louisiana State Police dispatch and requested a tow truck. Prior to the vehicle being towed, Tademy was required to inventory the contents of the vehicle. Gov. Ex. 4, Section A.3.1.f.; Gov. Ex. 2, Section C.8.iii. Upon the arrival of the tow truck driver, and consistent with State Police policy, Trooper Tademy completed a Vehicle Storage Record for the Defendant's vehicle. Gov. Ex.

5. While conducting the inventory, he discovered the firearm, narcotics, and additional contraband in plain view.

**Conclusion**

Trooper Tademy conducted a lawful traffic stop of Defendant's vehicle.  The young age of the driver, who stated that she did not know Defendant, caused Tademy to be highly suspicious of criminal activity.  Those suspicions, which were perfectly reasonable under the circumstances, blossomed into probable cause of illegal drug activity when Trooper Tademy and Officer Meyers saw the smoking pipe in the belt loop of Defendant's pants and Defendant admitted (post-Miranda) that he removed the pipe from the glove box to conceal it.  The firearm, illegal narcotics, and other contraband were then found during an inventory search conducted pursuant to established Louisiana State Police policy and procedures. There is no basis to suppress the evidence in this matter.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Doc. 29) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections.

Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 14th day of August, 2015.

Mark L. Hornsby
U.S. Magistrate Judge